UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD PRICE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:18-cv-12035-IT |
| | * | |
| CHRISTOPHER MORI, CHRISTOPHER | * | |
| JOHNSON, and TOWN OF DUXBURY, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

February 1, 2021

TALWANI, D.J.

Plaintiff Richard Price brought this action against the Town of Duxbury and individual officers of the Duxbury Police Department ("DPD"), Sergeant Christopher Mori and Officer Christopher Johnson. Compl. [#1]. He alleges that, following an altercation with his ex-wife, he was falsely arrested and maliciously prosecuted in violation of 42 U.S.C. § 1983 ("section 1983") and state law. Presently before the court is the Defendants' Motion for Summary Judgment [#41]. For the following reasons, the motion is GRANTED.

## I.    Factual Background

For purposes of summary judgment, drawing all possible inferences in Price's favor, the court finds the facts as follows.

On November 21, 2014, Price and his ex-wife, Mia Lim, arranged to exchange custody of their six-year-old son, NP,[1] in the DPD parking lot. Pl's Redacted Resp. to Defs' Stmt. of Material Facts ("Pl's SOF Resp.") ¶¶ 1-2 [#57]. The exchange did not go smoothly, and Price

_____

[1] The names of minor children are omitted for confidentiality purposes. See Fed. R. Civ. P 5.2.

ultimately ran into the police station lobby with NP in his arms and Lim running behind. Id. at ¶ 9; Surveillance Video #2 [#47-9]; Surveillance Video #6 [#47-9].

Sergeant Mori entered the lobby after them a few seconds later. Surveillance Video #5 [#47-9]; Redacted Cruice Aff. ¶ 12 [#56-1]. Price put down NP, who ran to a different part of the lobby. Surveillance Video #6 [#47-9]. Lim walked over to NP and put her arms around him, but he pushed himself away and tried to run from her. Surveillance Video #6 [#47-9].

At that point, Sergeant Mori and Officer Johnson brought Price into the DPD "operations" room, where he remained for approximately ten minutes. Id.; Redacted Cruice Aff. ¶ 13 [#56-1]; Pl's Redacted Dep. 106 [#59-1]. He was questioned but did not want to speak with police. Mori Dep. 88 [#43-4]. Lim and NP were brought to a different room, Pl's SOF Resp. ¶ 11 [#57], where Lim told Mori that Price had assaulted her, that he had thrown her to the ground, and that she feared for her and NP's lives, Mori Dep. 79-80 [#43-4]. NP was visibly upset and said that he didn't want to go home with his father. Id. at 79. Mori then told Officers Johnson and Amado to arrest Price, id. at 80; Amado Dep. 16 [#43-6], and Price was arrested and brought to booking, Pl's Redacted Dep. 106 [#59-1].

After ordering Price's arrest, Sergeant Mori contacted Lieutenant Lewis Chubb, provided him with an account of Lim's statement, and asked him to review the footage from the DPD security cameras. Mori Dep. 88-89 [#43-4]. The videos showed that Price arrived first, and as Lim pulled into the parking lot, he got out of his car and walked towards the rear passenger-side door of Lim's car. Surveillance Video #2 [#47-9]. Price opened the door, picked up NP, and walked back towards his car. Id. At that point, Lim got out of her car and started to follow Price, who was still holding NP. Id. Price began to run around the parking lot, followed by Lim, and the

two had a physical altercation that resulted in Price, NP, and Lim falling to the ground. Id.[2] After watching the videos, Chubb informed Mori that nothing in the footage was inconsistent with Lim's statement. Mori Dep. 90, 92 [#43-4]; Chubb Dep. 40, 48-49 [#47-6].

On November 22, 2014, Officer Amado filed an application for criminal complaint against Price. Application for Complaint [#66-1]. In the statement of facts in support of the application, Amado wrote that Chubb had reviewed the surveillance videos before Price was placed under arrest. Id.

Price was criminally prosecuted for one count of assault and battery and one count of assault and battery on a household or family member. Trial Tr. II:134-135 [#47-2]. A jury acquitted him of both counts. Id.

## II.     Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

---

[2] The Defendants claim that, during the altercation, Price put his arm around Lim's neck "akin to a headlock position." Pl's SOF Resp. ¶ 7 [#57]. Price disputes this and claims that "it is readily visible on the video recording" that "Lim attacked the plaintiff." Id. The surveillance videos are not conclusive, and because what actually transpired in the parking lot is not material to the resolution of the claims raised in the Complaint [#1], the court makes no further finding as to the altercation in the parking lot.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 331.

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine issue of disputed fact remains. Id. at 314. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

## III.    Discussion

### A.    *Section 1983 Claims*

Price alleges that Sergeant Mori, Officer Johnson, and Duxbury violated his Fourth and Fourteenth Amendment rights pursuant to section 1983 by falsely arresting and maliciously

prosecuting him. Redacted Compl. ¶ 41 [#55]. The Defendants move for summary judgment, asserting that Mori and Johnson are entitled to qualified immunity because their actions were reasonable and therefore not a violation of Price's constitutional rights. Defs' Redacted Mem. 5 [#58].

      1.     False Arrest

      a.     Probable Cause Standard

An arrest is lawful when the arresting officer has probable cause to believe that the person has committed a criminal offense. See, e.g., Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014). It "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." Gerstein v. Pugh, 420 U.S. 103, 121 (1975). Rather, it exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense." United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987) (quoting Beck, 379 U.S. at 91). Under the collective-knowledge doctrine, in cases "where law enforcement authorities are cooperating in an investigation, the knowledge of one is presumed shared by all." Illinois v. Andreas, 463 U.S. 765, 771 n.5 (1983)

      b.     G. L. c. 209A, § 6

Massachusetts General Laws chapter 209A, § 6, authorizes police to make warrantless arrests for certain misdemeanors in the context of domestic abuse. In relevant part, the statute provides that:

> Whenever any law officer has reason to believe that a family or household member has been abused or is in danger of being abused, such officer shall use all reasonable means to prevent further abuse. The officer shall take, but not be limited to the following action:

. . .

(7) arrest any person a law officer witnesses or has probable cause to believe has violated a temporary or permanent vacate, restraining, or no-contact order or judgment . . . . When there are no vacate, restraining, or no-contact orders or judgments in effect, arrest shall be the preferred response whenever an officer witnesses or has probable cause to believe that a person:

(a) has committed a felony;

(b) has committed a misdemeanor involving abuse as defined in section one of this chapter;

(c) has committed an assault and battery in violation of section thirteen A of chapter two hundred and sixty-five.

The safety of the victim and any involved children shall be paramount in any decision to arrest.

G. L. c. 209A, § 6. The statutory definition of "abuse" includes "attempting to cause or causing physical harm" and "placing another in fear of imminent serious physical harm" when such acts occur between family or household members. Id. § 1(a)-(b).

    c.       Probable Cause Determination

To determine whether Sergeant Mori and Officer Johnson had probable cause to arrest Price, the court considers the facts and circumstances known to the officers at that time.

First, Sergeant Mori saw Price run into the police station holding NP, followed by Lim. Surveillance Video #5 [#47-9]; Redacted Cruice Aff. ¶ 12 [#56-1]. Upon entering the lobby behind them, he found Lim "shaking, crying, [and] screaming." Mori Dep. 51 [#43-4]. When Price put NP down, NP began "to dart around the lobby" and was also "crying and screaming." Id.

Second, Lim reported that Price had assaulted her in the parking lot, that he had thrown her to the ground, and that she feared for her life and NP's. Mori Depo 80 [#43-4]. Although an alleged victim's statement does not automatically establish probable cause to arrest, see, e.g.,

6

Lewis v. Kendrick, 944 F.2d 949, 952 (1st Cir. 1991), "police officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause," Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004). Indeed, the "uncorroborated testimony of a victim or other percipient witness" is usually enough to support a finding of probable cause. Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 10 (1st Cir. 2004). A victim is considered a "reliable informant" even if "his or her reliability has not theretofore been proven or tested." Nelson v. Moore, 470 F.2d 1192, 1197 (1st Cir. 1972). And "an officer's good-faith reliance on information provided by a victim, even if it turns out to be false, may provide a valid basis for probable cause." Murrell v. Petruzziello, No. CIV.A. 12-11727-FDS, 2013 WL 3786466, at *3 (D. Mass. July 17, 2013) (citing Forest, 377 F.3d at 57).

Price claims that the officers were unreasonable in determining that Lim's statement was credible because she was "visibly incoherent and hysterical" and "provided no useful information." Pl's SOF Resp. ¶ 17 [#57]. He argues that this question of officer reasonableness—and therefore of probable cause—is a genuine dispute of material fact that should be presented to a jury. Pl's Opp. 11 [#56]. But Price's factual assertions are not "put forward on personal knowledge or otherwise documented by materials of evidentiary quality." Morelli v. Webster, 552 F.3d 12, 19 (1st Cir. 2009). Although Price was briefly in the lobby with Lim, the two were quickly separated, and Price has provided no evidence that Lim was "incoherent" when providing her statement to police. In addition, Sergeant Mori interpreted Lim's distraught demeanor as corroboration, not contradiction, of her account. Mori Dep. 79 [#43-4]. Where this was based on his training in assessing domestic violence situations, id., it was not unreasonable for Mori to believe that Lim's complaint was supported by the surrounding circumstances.

Given the totality of the facts and circumstances known to the officers at the time of the arrest, the court finds that the officers had probable cause to believe that Price had committed an offense and that his alleged conduct met the statutory definition of abuse under G. L. c. 209A, § 1.

        d.     Qualified Immunity

Even if Sergeant Mori and Officer Johnson did not have probable cause to arrest Price, the officers would be entitled to qualified immunity.

The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When a public official asserts a qualified immunity defense, courts engage in a two-part inquiry, asking (1) whether the facts alleged by the plaintiff make out a violation of a constitutionally protected right, and (2) whether, at the time of the defendant's alleged violation, the right at issue was clearly established such that a reasonable officer would have known that his or her conduct violated that right. See Morelli, 552 F.3d at 18.

Here, the court finds that there was no constitutional violation because the officers had probable cause to arrest Price for "abuse" within the meaning of G. L. c. 209A, § 1. Even if the officers did not have probable cause, however, there would not have been a violation of a clearly established right.

A police officer is entitled to qualified immunity "so long as the presence of probable cause is at least arguable." Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992). In effect, this means that police officers are protected by qualified immunity even where a court later determines that there

was no probable cause for the arrest, so long as the mistake was a reasonable one. See Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992). "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" White v. Pauly, 137 S. Ct. 548, 551 (2017) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)).

Based on the facts and circumstances known to the officers and clearly established law such as Forest, 377 F.3d at 57, and Acosta, 386 F.3d at 10, "a reasonably competent police officer could have believed that probable cause existed to arrest." Ricci, 974 F.2d at 6–7. Summary judgment is therefore warranted.

2.      Malicious Prosecution

Price claims that Sergeant Mori and Officer Johnson maliciously prosecuted him in violation of the Fourth Amendment.[3] Redacted Compl. ¶ 41 [#55]. A malicious prosecution claim under section 1983 requires more than a common law tort of malicious prosecution. To succeed on a constitutional claim for malicious prosecution, a plaintiff must "establish that 'the defendant (1) caused (2) a seizure of plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor.'" Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)). The second element requires "a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure." Harrington v. City of Nashua, 610

---

[3] The Redacted Complaint ¶ 41 [#55] states that the malicious prosecution claim is brought pursuant to both the Fourth and the Fourteenth Amendments. However, malicious prosecution in Massachusetts does not give rise to a procedural due process claim under the Fourteenth Amendment because Massachusetts provides an adequate remedy. See Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) ("No procedural due process claim can flourish in this soil because Massachusetts provides an adequate remedy for malicious prosecution").

F.3d 24, 32 (1st Cir. 2010) Here, Price has failed to demonstrate "a seizure pursuant to legal process unsupported by probable cause."

Price points to his arrest, but that arrest was without a warrant. For a section 1983 malicious prosecution claim, plaintiff must show the seizure was "*pursuant to legal process*." Nieves, 241 F.3d at 54 (citing Heck v. Humphrey, 512 U.S. 477, 484 (1994); Calero–Colon v. Betancourt–Lebron, 68 F.3d 1, 3 (1st Cir. 1995)) (emphasis original). "Generally, the offending legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)." Id. (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 115 (2d Cir. 1995)). In this case, where Price was arrested without a warrant, the arrest "which antedated any legal process—cannot be part of the Fourth Amendment seizure upon which [the plaintiff] base[s] [his] section 1983 claims." Id.; see also Harrington, 610 F.3d at 32 ("Where, as here, a person is arrested without a warrant and before the issuance of any legal process, that arrest does not form part of a Fourth Amendment seizure upon which a section 1983 malicious prosecution claim may be premised").

Price was subsequently charged by criminal complaint. But that legal process did not amount to a seizure where nothing in the summary judgment record suggests that Price "was detained after the initiation of the criminal charge, forced to post a pecuniary bond, subjected to travel restrictions, or otherwise burdened with any significant deprivation of liberty." Harrington, 610 F.3d at 32. Where there is no indication of any such imposition, there was no actionable seizure, Price's Fourth Amendment rights were not violated, and the Defendants are entitled to summary judgment.

3.       Conspiracy

Price also claims that Sergeant Mori and Officer Johnson conspired to deprive him of his civil rights. Pl's Redacted Opp. 17 [#56]. To establish a civil rights conspiracy, a plaintiff must show "not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." Nieves, 241 F.3d at 53. Where the court has found no violation of Price's constitutional rights, it must grant summary judgment for the Defendants on the claim that they conspired to violate those rights.

4.       Municipal Liability

Price additionally seeks to impose liability on Duxbury under the theory articulated in Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). Under Monell, a municipality may be held liable under section 1983 where an "action pursuant to official municipal policy of some nature causes a constitutional tort." 436 U.S. at 691. To assess municipal liability, the court considers two elements: (1) whether the plaintiff's harm was caused by a constitutional violation, and (2) whether the city was responsible for that harm. Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005). Where, as here, the court has found the absence of a constitutional violation, the municipality cannot be held liable.

B.       *State Law Claims*

In addition to his section 1983 claims, Price brings two state law claims for violation of the Massachusetts Civil Rights Act ("MCRA"), G. L. c. 12, § 11I, and common-law malicious prosecution.

1.   Massachusetts Civil Rights Act

A claim brough under § 11H of the MCRA requires a plaintiff to demonstrate that "(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States

or the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation, or coercion.'" Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989) (quoting G. L. c. 12, § 11I). Here, again, where the court has found that there was no violation of Price's constitutional rights, and where he has not argued a violation of any other federal or state laws, summary judgment is appropriate.

2. Common-Law Malicious Prosecution

To establish a claim of common-law malicious prosecution, a plaintiff must demonstrate "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendants; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." Nieves, 241 F.3d at 53. Unlike its constitutional counterpart, common-law malicious prosecution does not require a Fourth Amendment seizure but adds the element that the defendants must have acted maliciously. Id.

In support of his claim, Price asserts that (1) the surveillance videos provided the officers with definitive proof that Lim's version of events was false and that they consequently lacked probable cause to apply for a complaint; (2) the charging documents falsely claimed that Lieutenant Chubb had reviewed the videos prior to Price's arrest; (3) the officers withheld the videos from the clerk magistrate; and (4) they lied to the clerk magistrate that the videos supported the charges. Pl's Redacted Opp. 13-17 [#56]. However, Price has provided no evidence that Sergeant Mori or Officer Johnson were involved in these actions. First, only Chubb, who was not named as a defendant to this action, viewed the videos. Mori Dep. 88-90 [#43-4]; Chubb Dep. 49 [#47-6]. As noted above, the court finds the videos inconclusive as to

12

what happened, but, in any event, where neither Mori nor Johnson saw the videos and where the court has determined that they had probable cause to arrest Price, there was no "absence of probable cause for the charges." Nieves, 241 F.3d at 53. Second, while Officer Amado misstated when Chubb had viewed the videos, Application for Complaint [#66-1], there is no evidence that Johnson or Mori were responsible for Amado's misstatement or that it was made maliciously as opposed to accidentally.[4] Nor has Price provided any evidence that Mori or Johnson lied to the clerk magistrate. Chubb told Mori that the videos did not contradict Lim's statement, Mori Dep. 90, 92 [#43-4]; Chubb Dep. 40, 48-49 [#47-6], and nothing in the summary judgment record suggests that Johnson or Mori told the magistrate that the videos corroborated Lim's account. Price has therefore failed to meet his burden.

### IV.    Conclusion

For the forgoing reasons, the Defendants' Motion for Summary Judgment [#41] is GRANTED.

IT IS SO ORDERED.

February 1, 2021                                    /s/ Indira Talwani
                                                   United States District Judge

---

[4] Amado is no longer a defendant, as Price voluntarily dismissed him "on the grounds that upon analysis of discovery, it appears a claim is unlikely to succeed." Notice of Voluntary Dismissal [#40].